## BISCHOFF *v.* WETHERED.

1. A judgment recovered in the Common Pleas, at Westminster, England, against a person in the United States, without any service of process on him, or any notice of the suit other than a personal one served on him in this country, has no validity here, even of a *primâ facie* character.

2. On a suit at law, involving a question of priority of invention, where a patent under consideration is attempted to be invalidated by a prior patent, counsel cannot require the court to compare the two specifications, and to instruct the jury, as matter of law, whether the inventions therein described are or are not identical. The rule on the subject stated.

ERROR to the Circuit Court for the District of Maryland.

Bischoff and others brought an action, in the court below, against Wethered, to recover damages for breach of covenant in the assignment of one-fortieth part of an English patent granted to one Newton. The covenant was that the patent was in all respects valid and unimpeachable. The breach complained of was that it was null and void. The declaration contained certain other counts, namely, the ordinary money counts, and a count on a judgment recovered in the Common Pleas, at Westminster Hall, in England. To the latter count the defendant pleaded *nul tiel record.* The only evidence adduced in its support was an exemplified copy of a judgment recovered against the defendant in the said Common Pleas, without any service of process on him, or any notice of the suit, other than a personal notice served in the city of Baltimore, and as no evidence was adduced to sustain the common counts, the chief question in the case arose under the count on the alleged covenant, that the patent in question was valid and unimpeachable.

This patent was granted to Newton on the 25th of May, 1853, and was for certain improvements in the generation of steam, consisting of an accessory steam-pipe carried from the boiler through the fire or chimney, so as to cause the steam conveyed therein to become superheated; and from thence carried to the steam-chest, or to an intermediate pipe, there to connect with the ordinary steam-pipe which conveys the steam from the boiler to the engine, so as to mix the su-

perheated steam with the ordinary steam as it comes from the boiler. The effect of this mixture is described to be that the superheated steam converts into steam all the remaining watery particles, froth and foam, contained in the ordinary steam, and thus dries and rarefies the whole mass, and makes it more effective.

The plaintiff having put in evidence the assignment containing the covenant declared on, and the letters patent granted to Newton, in order to show the breach of covenant, put in evidence a prior English patent, granted to one Poole, in 1844, for an invention which the plaintiff claimed was identical with that patented to Newton. The plaintiff then called upon the court to compare the two specifications, and to instruct the jury that the patent to Newton was not a valid and unimpeachable patent, inasmuch as the invention therein described was· not novel, but was already substantially described in the specification of Poole; and that under the covenants contained in the assignment, the plaintiffs were. entitled to recover £500, the amount of purchase-money paid, with interest. This the court refused to do, and the plaintiffs excepted.

The defendant then prayed the court to instruct the jury, amongst other things, that there is not on the face of the respective patents of Newton and Poole such an identity as authorizes the court to pronounce that they are for one and the same invention, and that for that reason the patent granted to Newton is invalid; and such invalidity being necessary to support the plaintiffs' claim, and being wanting, the verdict must be for the defendant. The court granted this prayer, and instructed the jury accordingly, and a verdict was found for the defendant. The plaintiffs excepted to this instruction. The case being brought here, the questions were—

1st (one not pressed). What effect had the proceeding in the Common Pleas in England?

2d. The principal one—whether the court below was bound to compare the two specifications, and to instruct the jury, as matter of law, whether the inventions therein described were, or were not, identical?

. *Mr. W. M. Addison, for the plaintiff in error; Mr. J. B. Latrobe, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

As to the first point raised—to wit, the effect of the proceeding in the Common Pleas at Westminster Hall—it is enough to say that it was wholly without jurisdiction of the person, and whatever validity it may have in England, by virtue of statute law, against property of the defendant there situate, it can have no validity here, even of a *primâ facie* character. It is simply null.

The second and principal question in the case raises an important question of practice under the patent law, and deserves to be seriously considered by this court.

It is undoubtedly the common practice of the United States Circuit Courts, in actions at law, on questions of priority of invention, where a patent under consideration is attempted to be invalidated by a prior patent, to take the evidence of experts as to the nature of the various mechanisms or manufactures described in the different patents produced, and as to the identity or diversity between them; and to submit all the evidence to the jury under general instructions as to the rules by which they are to consider the evidence. A case may sometimes be so clear that the court may feel no need of an expert to explain the terms of art or the descriptions contained in the respective patents, and may, therefore, feel authorized to leave the question of identity to the jury, under such general instructions as the nature of the documents seems to require. And in such plain cases the court would probably feel authorized to set aside a verdict unsatisfactory to itself, as against the weight of evidence. But in all such cases the question would still be treated as a question of fact for the jury, and not as a question of law for the court. And under this rule of practice, counsel would not have the right to require the court, as matter of law, to pronounce upon the identity or diversity of the several inventions described in the patents produced. Such, we think, has been the prevailing rule in this country, and we see no sufficient reason

for changing it. The control which the courts can always exercise over unsatisfactory verdicts will enable them to prevent any wrong or injustice arising from the action of juries; whereas, if the courts themselves were compellable to decide on these often recondite and difficult questions, without the aid of scientific persons familiar with the subjects of the inventions in question, they might be led into irremediable errors, which would produce great injustice to suitors. We are disposed to think that the practice adopted by our courts is, on the whole, the safest and most conducive to justice.

It may be objected to this view that it is the province of the court, and not the jury, to construe the meaning of documentary evidence. This is true. But the specifications of patents for inventions are documents of a peculiar kind. They profess to describe mechanisms and complicated machinery, chemical compositions and other manufactured products, which have their existence *in pais*, outside of the documents themselves; and which are commonly described by terms of the art or mystery to which they respectively belong; and these descriptions and terms of art often require peculiar knowledge and education to understand them aright; and slight verbal variations, scarcely noticeable to a common reader, would be detected by an expert in the art, as indicating an important variation in the invention. Indeed, the whole subject-matter of a patent is an embodied conception outside of the patent itself, which, to the mind of those expert in the art, stands out in clear and distinct relief, whilst it is often unperceived, or but dimly perceived, by the uninitiated. This outward embodiment of the terms contained in the patent is the thing invented, and is to be properly sought, like the explanation of all latent ambiguities arising from the description of external things, by evidence *in pais*.

We are, therefore, of opinion that the Circuit Court was justified in refusing to give the instructions demanded by the plaintiffs, and in giving that which was asked by the defendant.

The precise question has recently undergone considerable

discussion in England, and has finally resulted in the same conclusion to which we have arrived. The cases will be found collected in the last edition of Curtis on Patents.* It was at first decided in the cases of *Bovill* v. *Pimm,*† *Betts* v. *Menzies,*‡ and *Bush* v. *Fox,*§ that it was the province and duty of the court to compare the documents and decide on the identity or diversity of the inventions. But in 1862, Lord Westbury, in two very elaborate judgments, one of which was delivered in the House of Lords on occasion of overruling the decision in *Betts* v. *Menzies,* held that it belonged to the province of evidence, and not that of construction, to determine this question. "In all cases, therefore," he concludes, "where the two documents profess to describe an external thing, the identity of signification between the two documents containing the same description, must belong to the province of evidence, and not that of construction." Lord Westbury very justly remarks, that two documents using the same words, if of different dates, may intend very diverse things, as, indeed, was actually decided by this court in the case of *The Bridge Proprietors* v. *The Hoboken Company.*‖ The court, in that case, said: "It does not follow that when a newly invented or discovered thing is called by some familiar word, which comes nearest to expressing the new idea, that the thing so styled is really the thing formerly meant by the familiar word." And the decision was that the word "bridge," in an old bridge law, passed in 1790, did not mean the same thing as the same word meant when applied to the modern structure of a railroad bridge.

This view of the case is not intended to, and does not, trench upon the doctrine that the *construction* of written instruments is the province of the court alone. It is not the *construction of the instrument,* but the *character of the thing invented,* which is sought in questions of identity and diversity of inventions.

**JUDGMENT AFFIRMED.**

---

*  ₰ 446.                              †  36 English Law and Equity, 441.
‡  1 Ellis & Ellis, Q. B. 999.        §  38 English Law and Equity, 1.
‖  1 Wallace, 116.