### CITIZENS' BANK *v*. BROOKS.

*(Circuit Court, D. Vermont. October Term, 1884.)*

1. ACTION ON JUDGMENT OBTAINED IN ANOTHER STATE—AUTHORITY OF ATTORNEY TO APPEAR FOR DEFENDANT.

   In an action in a circuit court on a judgment obtained in another state, the record of the appearance of attorneys of the court for the defendant is not conclusive upon him, and he may show that they had no authority to act in his behalf.

2. SAME—RENDITION OF PERSONAL JUDGMENT—KNOWLEDGE OF DEFENDANT—TAKING DEPOSITION—PAYING COUNSEL.

   Taking the deposition of a defendant, who is a citizen of another state, by the plaintiff, in an action under the Kansas statute to enforce the liability of stockholders, will not render the judgment obtained personally binding on such defendant, although he contributed to the common defense afterwards by furnishing funds to pay counsel.

3. PRACTICE—RENDITION OF JUDGMENT—DEATH OF DEFENDANT.

   When the whole case is in the hands of the court, and before its decision is rendered the defendant dies, a judgment may be entered as of the day in the term when the last of the evidence was submitted.

At Law.

*Martin & Eddy,* for plaintiff.

*Harkins & Stoddard,* for defendant.

WHEELER, J. This is an action of debt on a judgment recovered in the circuit court of the United States for the district of Kansas for $9,337.16 damages, and $108.30 costs. The defendant has pleaded five pleas, in the last of which he alleges that he was not a citizen of Kansas, nor in Kansas, at the time of the commencement of that action, nor at any time afterwards; that no process in it was ever served upon him; that he never authorized or employed any attorney or other person to appear for him and in his behalf, nor authorized or empowered any person to employ or procure an attorney or other person to appear for him and in his behalf, and that no attorney or

other person ever had any authority to appear for him and in his behalf in that suit; and that he never entered his appearance therein in person. To this plea the plaintiff replies that the defendant had knowledge of the commencement and pendency of the suit, and did by his agents procure attorneys of the court there to appear for him and in his behalf in that cause, and that he did, by those attorneys, voluntarily appear in said cause and defend it, and after the judgment had been rendered, he paid the attorneys for their appearance in the cause and for defending it, and ratified and confirmed their appearance in and defense of it. The defendant traversed this replication, and issue to the country is joined upon it. The other pleadings are disposed of in such manner as to leave this one for trial, and it is tried by the court upon waiver in writing of a jury. The record shows service by attachment of property of the defendant as a non-resident of Kansas only, and an appearance and answer for the defendant by the attorneys named in the replication. The plaintiff claims that the record of the appearance in the cause of attorneys of the court for the defendant is conclusive of their right to appear for him, and that evidence to the contrary should not be considered. There are cases which perhaps go to this length. *Mills* v. *Duryee,* 7 Cranch, 481; *Lapham* v. *Briggs,* 27 Vt. 26. But it is now well settled in the courts of the United States that want of jurisdiction to bind the person may be shown in an action upon the judgment against the person. *Thompson* v. *Whitman,* 18 Wall. 457; *Knowles* v. *Gas-light Co.* 19 Wall. 58; *Hall* v. *Lanning,* 91 U. S. 160; *Graham* v. *Spencer,* 14 FED. REP. 603. · The fact that the attorneys entered an appearance for the defendant is, perhaps, conclusively shown by the record, but that they had authority in fact, or any more than that they assumed to have authority, is not shown at all by it. The presumption that all was rightly done arising from their being officers of the court, is admitted to, and doubtless does, cast the burden upon the defendant of showing that the appearance was without his authority. The defendant testifies distinctly that he never employed, nor authorized the employment of any attorney to appear for him in the case, and there is no proof that he ever did. Three attorneys appeared; one at first, and two others afterwards. The testimony of the last two shows that they were engaged by the first, and he is dead, and nothing is produced to show that the defendant ever had any communication with him. A deposition of the defendant was taken by the plaintiff in Vermont, where the defendant resided, on notice accepted by the attorneys in Kansas, and filed in that cause, in which it is stated that the deponent "is the defendant" in the cause. After the judgment was rendered the attorneys telegraphed to the defendant: "Simonds writes refusing to be responsible for fees. Are we to be paid for services, and by whom? Answer definitely, quick." He answered: "We expect to pay our counsel." In a few days he sent $300 for them.

The plaintiff relies upon this to sustain the allegation of the replication that he knew of the suit, and of the employment and appearance of the attorneys in it, and ratified their doings, and paid them for their services. The substance of the replication is that he voluntarily submitted himself to the jurisdiction of the court, and that the cause was thereupon tried.

If he was heard there upon the trial he has no right to be heard again upon the questions involved except upon appeal, but is bound. That he had notice of the suit, however full and formal, out of the jurisdiction would not bind him. He could not be compelled to appear by anything done without the jurisdiction. *Bischoff* v. *Wethered*, 9 Wall. 812. Therefore taking his deposition would not bind him. The other party had the right to take it in order to obtain a judgment to bind the property attached, but he could not be made a party personally in that manner; if he could, the jurisdiction of courts could be extended without their territorial limits by merely resorting to that proceeding.

The suit was founded upon an alleged liability of the Adams bank, a state bank of Kansas, of which the defendant and Simonds mentioned in the telegram and others were stockholders, to the plaintiff, and a statute of Kansas making stockholders personally liable on the dissolution of the corporation. The statute also provided for contribution between stockholders when any were made to pay. Comp. Laws Kan. 233, § 44. The defendant testifies that he understood that there was litigation going on in Kansas in respect to the liability of the Adams bank to the plaintiff, but not that it was against him personally, and that some of the other stockholders were defending it, and that the telegram referred to that litigation; and he testifies that the money which he sent was contributed by other stockholders residing near him as well as himself, and sent to one of those whom he understood to be defending to aid in paying the attorneys, and not to the attorneys as his attorneys. No one is called to contradict this testimony, and there is nothing opposed to its correctness unless the circumstances contradict it.

From the circumstances it is apparent enough that the other stockholders, or some of them, employed the attorneys to appear and defend this case on account of their interest in the result; and from his testimony, that he did not know that his personal liability was being passed upon, although he knew that what might affect him ultimately was involved. Although he knew of, and was willing to and did contribute to, the common defense, he does not appear to have in any way ratified or confirmed the submission of his personal liability to the judgment of the court. As the plaintiff had, and was entitled to, no proceedings to compel his personal appearance, it could not be had without he knowingly and voluntarily yielded it, and he could not ratify the assumption of others to appear and submit his case for him without knowledge of what they had assumed

to do for him. This is not intended to imply that what was done without jurisdiction over his person could be made binding upon him by any ratification after the judgment. Jurisdiction over the person at the time of the judgment is necessary to its validity as a personal judgment. A defendant might probably compensate any one who had, without his knowledge, undertaken the defense of a suit against him which might bind his property and failed, and not subject himself to the consequences of making the judgment bind him personally, when before it would only bind his property. The issue joined upon the replication to the fifth plea is found for the defendant.

The testimony in the case was closed on February 5th, except that there was reserved to the plaintiff the privilege of having the testimony of a witness who was sick and unable to attend, taken by the court at the residence of the witness on the next day, to the same effect in all respects, by consent of the parties, as if taken in court on that day. The death of the defendant was suggested on the opening of court the next day as having taken place after adjournment on the evening before. The plaintiff objected to anything further being done, but waived the taking of the testimony of that witness. The whole case was in the hands of the court during the life of the defendant. The arguments of counsel are in aid of its consideration.

In *Broas* v. *Mersereau,* 18 Wend. 653, a verdict was taken after the death of the party. In *Trelawny* v. *Bishop of Winchester,* 1 Burr. 219, judgment was rendered as of a time prior to the death, which occurred while the case was pending for argument. This was a common proceeding in the English courts from early times. Bac. Abr. "Abatement," F. And it is said by METCALF, J., in *Springfield* v. *Worcester,* 2 Cush. 52, to be the common course when an action which would fail by the death of either party before judgment is continued for argument or advisement, whether there has been a verdict or demurrer or agreed statement of facts, and one of the parties afterwards dies, to enter judgment as of a former term. This is all in the same term, and it seems proper that the case should be argued, considered, and judgment rendered as of the day in the term when the last of the evidence was submitted.

Judgment for defendant as of February 5th.