**NATIONAL ALUMINATE CORPORATION v. PERMUTIT CO.**

No. 758.

District Court, E. D. Missouri, E. D.

Oct. 18, 1943.

John H. Bruninga, of St. Louis, Mo., for plaintiff.

Carr, Carr & Gravely and Joseph J. Gravely, all of St. Louis, Mo., and Clarence D. Kerr, of New York City, for defendant.

COLLET, District Judge.

Now on this 18th day of October, 1943, the Statement, Findings of Fact and Conclusions of Law heretofore entered in this cause are modified and as modified are entered as of this date as follows, to-wit:

Statement.

By the petition in this case plaintiff seeks a declaratory judgment adjudging certain patents held by defendant invalid or in the alternative a judgment that plaintiff is not infringing those patents. An injunction is prayed to restrain defendant from bringing any action concerning the operation by plaintiff of its business. The defendant answered, admitting facts which established the existence of a justiciable controversy, and by counterclaim asserted the validity and ownership of patents which plaintiff is infringing and praying the usual equitable relief from such infringement. The trial proceeded as if defendant were the plaintiff as in an ordinary patent suit and plaintiff the defendant; the burden being assumed by defendant to show infringement and upon plaintiff to show invalidity of the patents.

Defendant's patents, six in number, are for the conditioning of water by chemical treatment. It is admitted by both parties that the art of softening water by means of passing it through a filter commonly known as a siliceous zeolite consisting of granular particles impregnated and regenerated with sodium chloride is old and has been practiced for many years. That process consists, generally speaking, of the absorption of magnesium and calcium by the siliceous material, which has exchange properties, and the release by the zeolite of sodium, which latter substance remained in the water. The effectiveness of the zeolite diminished in proportion to its use and was regenerated by restoring the zeolite with a solution of common salt. While this process was reasonably satisfactory for many purposes, scientists sought methods of also eliminating the sodium and improving the base material which had a comparatively short life or limited applications. A process, exemplified by defendant's patents, was developed by which granulated brown coal or some comparable material as a base, regenerated with an acid (which contains hydrogen), removed the magnesium and cal-

cium from the water without leaving the sodium in solution. The hydrogen zeolite accomplished this result by the exchange of hydrogen ions for the magnesium and calcium in the water leaving hydrogen ions in the water which were in turn easily eliminated. This hydrogen zeolite was capable of regeneration many times by the application of an acid—customarily sulfuric acid, to the base material. The significance of the use of brown coal lies in the fact that brown coal when granulated is durable and contains humic acid (some hydrogen) and has ion exchange properties useful as a hydrogen zeolite, giving the base material a natural efficiency which could be greatly increased by treatment with concentrated sulfuric acid. The defendant's patents cover both the process resulting in the softening of water and the production of the material—the zeolite—by the use of which the process was carried out. Plaintiff concededly uses the hydrogen zeolite process, which has been described. However, plaintiff contends that if defendant's Smit and Liebknecht patents be valid the scope of those patents is restricted to a process which utilizes a zeolite which is made by the treatment of coal with a quantity of concentrated sulfuric acid more than equal to the quantity of the base material used. Plaintiff uses less than an equivalent weight of acid. It formerly manufactured a zeolite produced by the use of approximately four parts acid to one part base material, but it has discontinued the production of that material pending the determination of the present controversy.

The charge of invalidity as well as the assertion that the scope of defendant's patents is limited to the use of more than an equivalent amount of acid, are based to a large extent upon the Halse British Patent, No. 7119 of 1902. It will be of value to briefly note here the effect given that patent by the Patent Office when the issuance of defendant's patents was under consideration. The Halse patent discloses a process and a product for use in decolorizing and purifying saccharine juices, syrups, oils and liquids by carbonizing wood, lignite or similar base material reduced to granular condition and treating this base material with from one-half to an equivalent amount of sulfuric acid, and revivifying the material with a like amount of acid. The file wrappers of defendant's (Smit patents Nos. 2,191,063 and 2,205,635 and defendant's Liebknecht patents Nos. 2,191,060

and 2,206,007, issued February 20, 1940, and June 25, 1940, respectively,) Smit patent No. 2,191,063 and Liebknecht patent No. 2,191,060, issued February 20, 1940, and defendant's Smit patent 2,205,635 and Liebknecht patent 2,206,007 issued June 25, 1940, disclose that the applications for these patents were pending in different divisions. The Examiners required that a limitation be inserted in some of the claims of both these applications providing for the use of more than an equivalent amount of acid, citing the Halse patent. In this respect the file wrappers rather clearly indicate that although some of the applications contained claims in broad general terms which did not limit the use of acid to more than an equivalent amount, the Examiners in charge of Smit 2,205,635 and Liebknecht 2,206,007 considered the Halse patent as a bar to the allowance in such applications (to Smit or Liebknecht) of a claim calling for an equal or less then equivalent amount of acid, and were of the opinion that the prior art also covered the increased efficiency of a zeolite produced by the use of more than an equivalent amount of acid. The amount of acid to base material suggested by Smit was 5 or 6 to 1, and by Liebknecht 4 to 1. On appeal to the Board of Appeals the claims of 2,205,635 and 2,206,007 were allowed including the unlimited general claims. The memorandum filed indicates that the Board did not believe that the prior art disclosed by the Halse patent covered the process or product disclosed by Smit and Liebknecht for the softening of water using either more or less than an equivalent amount of acid. It should be borne in mind, as of some probable significance to the Board, that the Halse patent was for the decolorizing of certain liquids. With respect to both validity and scope the present problem may be stated in very general terms to be a choice between the conclusions of one of the Examiners on the one hand and the Board and the other Examiner on the other.

The defendant's Vaughan U. S. Patent No. 2,190,853, applied for May 13, 1935, and issued February 20, 1940, consists of the substitution of an acid wash consisting of an acid of from one to five per cent in the preparation and regeneration of a durable humic zeolite such as brown coal for the purpose of softening water instead of an acid solution applied to a siliceous zeolite of questionable durability.

The defendant's Riley U. S. Patent No. 2,127,310, applied for May 24, 1937, and issued August 16, 1938, discloses a use of an hydrogen zeolite with regeneration accomplished by the use of only enough acid to regenerate approximately one-half of the base material as an hydrogen zeolite.

The foregoing statement, in very general language, will probably shock the sensibilities of those "skilled in the art", but may serve the purpose of indicating to some extent what the argument is about. The formal findings and conclusions follow:

### Findings of Fact.

1. The plaintiff, National Aluminate Corporation, is a Delaware corporation. The defendant, The Permutit Company, is also a Delaware corporation, has its principal office in New York but maintains a regular established place of business in St. Louis, Missouri. The present action seeks a declaratory judgment by plaintiff adjudging defendant's hereinafter mentioned patents invalid or in the alternative a judgment that the plaintiff is not infringing those patents.

2. The defendant's patents which plaintiff seeks to have declared invalid or not infringed are:

| Smit | 2,191,063 | Granted | February 20, 1940 |
| Smit | 2,205,635 | Granted | June 25, 1940 |
| Liebknecht | 2,191,060 | Granted | February 20, 1940 |
| Liebknecht | 2,206,007 | Granted | June 25, 1940 |
| Vaughan | 2,190,853 | Granted | February 20, 1940 |
| Riley | 2,127,310 | Granted | August 16, 1938 |

Defendant is the owner of all of these patents except the Smit patents. The title to the Smit patents is vested in the Alien Property Custodian with the defendant as the exclusive licensee.

3. The Smit and Liebknecht patents disclose a water conditioning process consisting of the preparation of a hydrogen zeolite prepared by applying to lignite or coal concentrated sulfuric acid in quantities both less, equal to and exceeding an equivalent amount of the base material—lignite or coal, and the use of this zeolite as a filter bed through which water to be conditioned is passed with the result that upon contact with the zeolite the water gives up its magnesium and calcium and sodium ions and hydrogen ions are in turn released into the water and thereafter eliminated by aeration or other similar process. The process also includes the regeneration of the zeolite used in the filter bed by the re-application of an acid, customarily sulfuric acid, to the zeolite. These zeolites may also be regenerated with a solution of common salt in which case they act as sodium zeolites and soften water by removing magnesium and calcium, giving up sodium to the water in exchange therefor.

4. The distinctive features of the Smit and Liebknecht disclosures for the purpose of the present controversy are:

(a) The use of a carbonaceous or organic base material such as lignite or coal for the manufacture of a hydrogen zeolite.

(b) The increasing or creating of ion exchange properties of such base materials by the application of a concentrated sulfuric acid to the humic material in quantities up to approximately four to six parts of acid to one part of base material.

(c) The durability of the resulting product.

(d) The repeated regeneration of the resulting product by use of dilute acid for use as an hydrogen zeolite, or of common salt for use as a sodium zeolite.

5. The distinctive disclosure, for present purposes, of the defendant's Vaughan patent is the use of a rugged organic material such as brown coal as a base and the revivifying or regeneration of the natural water softening propensities of this material by the use of a very weak sulfuric or hydrochloric acid—of from one to five per cent—instead of using a saline solution for the regeneration of the base as was done in processes following and carrying out the prior art.

Although Vaughan characterizes his material as an hydrogen zeolite "because it contains hydrogen as an exchangeable or replaceable ion", yet he does not do as Smit and Liebknecht have done in producing (what they call) hydrogen zeolites, to-wit—purposely enhancing or creating ion exchange capacity in the base material. It seems that the only claim Vaughan's material has to the designation "hydrogen" zeolite results from the contact of the base material with a dilute form of acid by

which the regeneration of the product to substantially its original potency is effected. Vaughan places a special emphasis upon the use of a natural humic substance as a base consisting of a durable, physically strong lignite.

6. The defendant's Riley patent is distinctive, for present purposes, in that it discloses a use of a hydrogen zeolite and the regeneration of that zeolite by the use of only enough acid to regenerate only a portion of the zeolite used in the filter bed.

7. A number of patents are cited by plaintiff as having, prior to the date of the defendant's discoveries, disclosed the art portrayed by the defendant's patents. The prior art, however, discloses old and established use of a siliceous zeolite consisting of a wide variety of base materials including natural substances containing humic acid treated with sodium chloride which is used as a filter bed and which water to be softened is passed through, with the result that the magnesium and calcium of the water is taken up by the zeolite and sodium released into the water. The zeolite bed is in turn regenerated by the simple application of the saline solution to the bed. The process leaves the sodium in the water. This is not objectionable when the water is to be used for many purposes but is objectionable when the water is to be used for a number of commercial purposes. One of the principal objects of the development of the art, which development is represented by the defendant's patents, was the elimination of the sodium. The prior art also includes the disclosure of the Halse British Patent (No. 7119, dated March 12, 1902). The Halse patent discloses a process and a product for decolorizing and purifying saccharine juices, syrups, oils and liquids by carbonizing wood or material of a similar nature—sawdust, wood shavings, cellulose (lignite or straw), reduced to a granular condition if necessary and impregnating or carbonizing this base material with sulfuric acid at low temperatures. The quantity of acid recommended is from one-half to an equal weight of the base material used according to its concentration. The material is revivified by the application of acid in "less quantity" than originally used. Although the Halse patent recommends the use of lignite which is a humic substance as a base material, there is no specific reference to humic substances in the patent. Nor is there any reference made to the durability of the base material. The disclosures of the Halse patent are of a process and product for decolorizing liquids without any object or reference to the softening of water. Other patents cited by plaintiff need not be specifically referred to. They represent the prior art as indicated above.

8. Plaintiff began having manufactured for it a sulfated carbonaceous or organic zeolite made by treating cannel coal with about four parts by weight of 20% fuming sulfuric acid in December, 1937. Plaintiff made its first sales of the material under the name Nalcite A in June, 1938, and has continued the sales of such material until July, 1941. On March 12, 1941, plaintiff began having manufactured for it a new material called Nalcite AX. This material was made by treating bituminous coal with fuming sulfuric acid—intended to be at a ratio of less than one part of acid to one part of base material, but actually the use of slightly less than one part of 20% fuming sulfuric acid to one part of base material amounted to the use of more than an equivalent amount of concentrated sulfuric acid, based on the weight of the coal.

9. Plaintiff has installed four water conditioning installations for railroads, which it owns and supervises. It has supervised and has had constructed under its direction and instruction other water softening and water conditioning plants, all of which utilize the product and process consisting of plaintiff's Nalcite A and Nalcite AX.

10. Notice of infringement was served by defendant upon plaintiff on August 2, 1940.

11. Plaintiff in its literature recommends the incomplete regeneration of its Nalcite A with acid in substantially the same manner and with substantially the same results as defendant's Riley patent discloses.

### Conclusions of Law.

I. The court has jurisdiction of the parties and of the subject matter.

II. Defendant's patents are valid. Defendant's patents 2,190,853, 2,191,063 and 2,191,060 are infringed by the manufacture, sale and direct and indirect use by plaintiff of Nalcite A and AX. Defendant's patents 2,205,635 and 2,206,007 are infringed by the direct and indirect use by plaintiff of Nalcite A and AX.

III. The plaintiff threatens the infringement of the Riley patent by its recommended incomplete regeneration of its "Nalcite A."

IV. Plaintiff's prayer for declaratory judgment should be denied and defendant's prayer for injunction and accounting should be granted.