

Walter J. Blenko, of Pittsburgh, Pa. (Fred N. Furber, of Minneapolis, Minn., Stebbins, Blenko & Webb, of Pittsburgh, Pa., and Fowler, Youngquist, Furber, Taney & Johnson, of Minneapolis, Minn., on the brief), for appellant.

R. T. McLean, of New York City (Oppenheimer, Hodgson, Brown, Donnelly & Baer and Montreville J. Brown, all of St. Paul, Minn., Pennie, Edmonds, Morton & Barrows, F. E. Barrows and W. B. Morton, Jr., all of New York City, on the brief), for appellee.

Before GARDNER, WOODROUGH, and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's suit for infringement of its two patents, No. Re 19719 entitled "Water Softening and Washing" and No. 2035652, entitled "Washing and Cleaning", both to Ralph E. Hall as inventor. The trial court held the patents invalid for lack of invention over an old publication referred to as the "Fresenius text" and also on the ground that the descriptions used in the two composition claims relied on fail to comply as to certainty of description with the requirements of Revised Statutes Section 4888, 35 U.S.C.A. § 33. Its opinion is reported in D.C., 72 F.Supp. 683, and we append in the footnote the findings of fact which are attacked on this appeal.[1]

The opinion identifies the plaintiff's patents, describes their scope, and plaintiff's business operations before and after the issuance of the patents and sets forth verbatim the two composition claims involved

---

[1] "4. Claim 28 of Patent No. Re. 19,-719, is the only claim of that patent asserted in this action * * *

"5. Claim 10 of Patent No. 2,035,652 is the only claim of the patent asserted in this action * * *

"6. The patents in suit both describe methods of water softening and of wash-

in the action. It describes the state of the prior art and the circumstances of the alleged discovery relied on. It also discloses the nature of defendant's business and its sales claimed to constitute infringements, and having set forth the defenses of invalidity of the patents for lack of invention, anticipation and insufficiency of description, etc., and quoted the text of the controlling statutes, it states the questions for decision. The evidence and the reasons upon which it was decided that the patents were invalid as constituting no invention or discovery over the quoted "Fresenius text" are stated fully with meticulous care and complete clarity.

In announcing its conclusion that the descriptions used in the patent claims involved are inadequate, the opinion does not revert to particulars of the evidence. It is observed that "the claims are made up of chemical combinations of materials long known and used in the science of chemistry", and that they left "one who might attempt to use the discovery to find it out by experiment" and that "claims may not be broadened in terms of function", but specific findings were made (13 and 14) which complete the statement of the grounds for this part of the court's decision.

The appellant contends that the trial court's findings 6, 7 and 12, concerning anticipation, and 13 and 14, concerning insufficiency of description, were clearly erroneous, and that its patents should be held valid and infringed.

We think that the opinion and findings of the trial court present the controversy between the parties with such completeness that it is unnecessary to restate the case here, and in discussing the appellant's charges of error familiarity with the opinion and findings attacked will be assumed.

██ As it is well settled that the presence or absence of "novelty" and "invention" necessary to sustain the validity of patents is a question of fact and the con-

---

ing effectively in hard water by preventing the precipitation of calcium therefrom. Hard water is caused almost entirely by the presence therein of calcium and calcium salts.

"7. The method of the patents in suit is the use of glassy phosphate material to effect sequestering or tying up of the calcium in a water-soluble complex. As a consequence of this sequestering or tying-up, the calcium is held in solution by a mechanism not entirely explainable and the precipitation of the calcium upon the addition of material which would normally precipitate it is hindered or repressed.

"8. Glassy phosphate material has been known for many years preceding the work of the patentee of the patents in suit under various names including Graham's salt and sodium hexametaphosphate.

"9. The claims asserted in this action relate specifically to washing compositions for carrying out the methods described containing this glassy phosphate material in admixture with unspecified proportions of common and widely-used detergents.

"10. Many years preceding the work of the patentee of the patents in suit, there had been recognized, described and published in printed textbooks by Fresenius, the fact that an interference with or repression of or hindering of the precipitation of calcium which a chemist would ordinarily expect upon the addition of a carbonate was accomplished by the presence of alkali metal metaphosphate.

"11. The Fresenius texts were not considered by the Examiner in the Patent Office during the prosecution of either of the patents in suit.

"12. No demonstrable distinction exists between the discoveries disclosed by the patentee in the patents in suit and those published in the printed texts of Fresenius. The differences between the disclosures of the patents in suit and of the Fresenius references, insofar as they relate to the underlying principle of each, are purely verbal and, insofar as they relate to the adaptation of that principle to commercial use, do not amount to patentable invention.

"13. Neither of the claims asserted in this action points out the combination intended to be claimed thereby with particularity and distinctness. Both claims are silent, other than in terms of function, as to the relative amounts required of the constituent materials all of which were long known and used prior to the work of the patentee of the patents in suit.

"14. It would be necessary for a person skilled in the art who wished to compound a composition covered by either of the claims asserted in this action to find out by experiment whether or not in a particular circumstance he was making use of the discovery claimed."

struction of patent claims where extrinsic evidence is required to determine the meaning of technical terms also involves questions of fact, Bischoff v. Wethered, 1869, 9 Wall. 812, 19 L.Ed. 829; Thomson Spot Welder Co. v. Ford Motor Co., 1924, 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098; United States v. Esnault-Pelterie, 1936, 299 U.S. 201, 57 S.Ct. 159, 81 L.Ed. 123; Crowell v. Baker Oil Tools, 1946, 9 Cir., 153 F. 2d 972, 981, 982; Hazeltine Corp. v. Crosley Corp., 6 Cir., 1942, 130 F.2d 344, 349; Webb v. Frisch, 7 Cir., 1940, 111 F.2d 887, 888; Strong-Scott Manufacturing Co. v. Weller, 8 Cir., 1940, 112 F.2d 389; Gasifier Mfg. Co. v. General Motors Corp., 8 Cir., 1943, 138 F.2d 197; Sears, Roebuck and Co. v. Talge, 8 Cir., 1944, 140 F.2d 395; National Aluminate Corp. v. Permutit, 8 Cir., 1944, 145 F.2d 175; Frank Adams Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 1945, 148 F.2d 497; Otis Pressure Control v. Guiberson Corp., 5 Cir., 1940, 108 F.2d 930, 932; Simons v. Davidson Brick Co., 9 Cir., 1939, 106 F.2d 518, 521; O'Leary v. Liggett Drug Co., 6 Cir., 1945, 150 F.2d 656, 666, 667; 9 Wigmore on Evidence (3rd Ed.) 2556, the task imposed on us by this appeal has been to study all the evidence and to pass upon the fact findings of the trial court according to the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. As stated by the Supreme Court in United States v. U. S. Gypsum Co., 1948, 333 U.S. 364, 394, 68 S. Ct. 525, 541, "That rule prescribes that findings of fact in actions tried without a jury 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' It was intended, in all actions tried upon the facts without a jury, to make applicable the then prevailing equity practice. * * * The practice in equity prior to the present Rules of Civil Procedure was that the findings of the trial court, when dependent upon oral testimony where the candor and credibility of the witnesses would best be judged, had great weight with the appellate court. The findings were never conclusive, however. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

The patent claims in issue read:

Claim 28 of Patent No. Re 19,719: "A washing composition comprising an alkali-metal metaphosphate which is water soluble and capable of sequestering calcium in a but slightly ionized condition and a deflocculative detergent capable of peptizing greases."

Claim 10 of Patent No. 2,035,652: "A washing composition for cleansing greasy articles, containing an alkali-metal saponifying detergent and sodium hexametaphosphate, the alkali-metal saponifying detergent being in amount sufficient to produce in aqueous solution a highly alkaline solution having a pH value of at least 10.5, the sodium hexametaphosphate being in amount sufficient to prevent the precipitation of calcium soap in the washing of greasy articles in such highly alkaline solution."

Turning first to the findings upon which the court concluded that the patents were invalid for want of invention in that they were anticipated by the Fresenius text, and that, as stated in the opinion, "no demonstrable distinction exists between the discoveries made by Dr. Hall and those published in the quoted text of Fresenius, supra, disclosing 'how the precipitation of calcium by alkali-metal carbonates is completely prevented * * * by the presence of citrates (Spiller) or alkali-metal metaphosphates (Rube)'", we have not been convinced that a mistake was committed in respect to the findings or conclusion. Even where a composition of matter is conceded to be new and useful, a patent claim therefor may not be sustained unless the necessary element of invention is found in some unexpected and valuable property shown by the claimed composition. Here the inventor himself testified with the language of the patent specifications before him that the teaching of the patents was "the sequestering or tying up of the calcium [of hard water]* in water soluble complex * * * with the result that you hinder or

---

* Interpolated.

68

repress the precipitation of the calcium on adding material which might normally make it insoluble" and "that while * * * the mechanism of what happens is sequestration or the like, the observable result is the interference with or repression of or hindering of the precipitation which one would ordinarily expect on adding material like a carbonate."

■ It appears to us, as it did to the trial court, that when Dr. Hall added soap to the hard Pittsburgh water which he had conditioned with his metaphosphates and shook up the mixture, the result of clear water free from the precipitation of calcium which would prevent sudsing of the soap simply verified the statements of the facts of chemistry in the text of Fresenius. No new unexpected valuable property of the mixture of metaphosphate and the hard water was disclosed. And our study of the whole record has not convinced that there is any demonstrable distinction between what the Fresenius text taught and what Hall discovered.

Appellant elaborates the arguments here that although Fresenius was himself a worker in the water softening art, he never used metaphosphates for the purpose and no one else did before Hall, and that the teaching of the text was not as found by the trial court. It is contended that the text may be read not as a statement of facts of chemistry within the knowledge of chemists, but as a mere warning to a chemist performing analysis, trying perhaps to find the amount of calcium in a composition. As though the text merely told him that the presence of metaphosphate in the composition would hinder or prevent his determination by ordinary methods of analysis.

The arguments reveal profound scientific knowledge as well as legal, and have been studied carefully, but fail to convince. We need not deny the possibility of reading the text and the patents as appellant would have them read, but we are not convinced that such is the necessary or reasonable reading or that the trial court was mistaken as to the facts of chemistry taught by the text or as to the disclosure of the patents and we sustain the findings and conclusions that the discovery of Hall was anticipated.

■ As to the finding of insufficient description in the two composition claims relied on. In General Electric Co. v. Wabash Appliance Co., 304 U.S. 364, 58 S.Ct. 899, 901, 82 L.Ed. 1402, the Supreme Court said:

"Patents, whether basic or for improvements, must comply accurately and precisely with the statutory requirements as to claims of invention or discovery. The limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public. The statute seeks to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights. The inventor must 'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.' The claims 'measure the invention.' * * *."

"A patentee may not broaden his product claims by describing the product in terms of function". 304 U.S. 364, 371, 58 S.Ct. 899, 902, 82 L.Ed. 1402. (Italics ours.)

■ The evidence is that the terms "alkali-metal metaphosphate" and "a deflocculative detergent capable of peptizing greases" used in claim 28 of Patent Re 19719 are descriptive and understandable to those skilled in the art but the uncertainty of the claim is in the application of the limitation "which is water soluble and capable of sequestering calcium in a but slightly ionized condition" to the ascertainment of what amounts of which alkali metaphosphates are intended to be claimed. Likewise, in claim 10 of Patent 2035652 the limitation "the sodium hexametaphosphate being in amount sufficient to prevent the precipitation of calcium soap in the washing of greasy articles in such highly alkaline solution" is a quantitative limitation. Under 28 there must be the right kind and enough of a metaphosphate to be water soluble and capable of the stated sequestration of calcium, and under 10 enough of the sodium hexametaphosphate to function in one circumstance and then enough to function in another, and there is no specification

of proportions identifying the claims with a particular new composition. Therefore a given composition can not be established as infringing either claim 10 or claim 28 without resorting to a performance in use test because in each the product is described in terms of functions. The claims use functional language at the point of novelty. Under an earlier patent to Jackson and Hall No. 1903041, owned by plaintiff, plaintiff sold phosphates for conditioning water like those it sells under the patents in suit and though the earlier patent claimed processes only and did not claim a composition, the descriptions of the processes show resulting compositions "consisting of a mixture containing a metaphosphate, a pyrophosphate and a regulated amount of an alkaline re-agent" which could not be distinguished from the composition of the claims of the patents sued on. Appellant's witnesses suggested that the compositions could be identified by labels put on them showing the purposes for which they are to be used, but we think the descriptions of the patent claims are the statutory yardstick and that they are insufficient.

In deciding that the descriptions of the composition claims were insufficient the court did not include in its citations of supporting cases Old Town Ribbon Co. v. Columbia Ribbon Mfg. Co., 2 Cir., 159 F. 2d 379, which it cited on the issue of anticipation and which has been stressed by the appellee on both issues. We have no doubt that the doctrine of that case that a "new use" can never be patentable would compel finding these claims invalid for insufficient description. Being for a combination of old elements and the proportions not being stated, the only novelty is the new use and the claim descriptions are in terms of the use and function. But the judgment here on the ground of insufficient description stands on the particular facts in the case as shown and found below. The evidence clearly showed that in the practice of the patents the products could be as well identified with claims of other older patents belonging to appellant as with the claims sued on, and that it is in fact necessary to resort to use and experiment to determine whether or not a composition makes use of the discoveries claimed in these patents. The insufficiency of the claim descriptions appears therefore as an actual fact constituting a real impediment to practice of the art so that it is not necessary to rely on the abstract declaration of law or statement of doctrine of the cited case.

We have fully considered the elaborated arguments directed against findings 13 and 14 and are not convinced that mistake was committed to justify reversing them. The fact that the claims relied on contain insufficient description necessitated dismissal of the action, even if Dr. Hall's discovery had amounted to invention.

Appellant stresses our decision in National Aluminate Corp. v. Permutit, 8 Cir., 145 F.2d 175, affirming D.C., 53 F.Supp. 501, in support of its contentions, but those opinions clearly show that both the trial court and this court thought that the compositions of the composition claims involved in that case disclosing coal zeolite material which caused a base exchange in hard water passed through it exchanging the water's calcium with its sodium and capable of regeneration with acid, were new compositions unanticipated and disclosing invention over prior art, and there was no discussion of the sufficiency of the descriptions to comply with the statute. In Wisconsin Alumni Research Foundation v. George A. Breon & Co., 8 Cir., 85 F.2d 166, our attention was directed to the issue of invention and we do not find the decision applicable here.

Accordingly, the judgment of the trial court appealed from is affirmed and we find no fault with its opinion.