John K. RAINS, Appellant,

v.

CASCADE INDUSTRIES, INC.

No. 16957.

United States Court of Appeals Third Circuit.

Argued March 18, 1968.

Decided Oct. 14, 1968.

Rehearing Denied Nov. 13, 1968.

Leon J. Greenspan, Greenspan & Aurnou, White Plains, N. Y., for appellant.

Frederick A. Zoda, Sperry & Zoda, Trenton, N. J., for appellee.

Before McLAUGHLIN, FORMAN and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This appeal involves the validity of a design patent for an on-the-ground swimming pool.[1]

Plaintiff, the holder of the patent, alleged infringement by defendant and sought damages and an injunction. Defendant counterclaimed for a declaratory judgment of invalidity or of noninfringement and sought damages and injunctive relief. The district court granted defendant's motion for summary judgment, declared the patent invalid and entered judgment for the defendant. 269 F. Supp. 688 (D.C.N.J.1967).[2]

█ Although the district court did not dispose of defendant's counterclaim for damages and injunctive relief and made no certification of appealability under Rule 54(b) of the Federal Rules of Civil Procedure, its judgment of invalidity denied plaintiff the injunctive relief which he sought and is therefore appealable under 28 U.S.C. § 1292(a) (1) as an order refusing an injunction.[3]

---

1. United States Design Patent No. 201,793 issued August 3, 1965.

2. Plaintiff's design has been the subject of a number of lawsuits. In Rains v. Monarch Pool Corp., et al., an unreported decision in the District Court for the Southern District of New York (65 Civ. 2531), Judge Sugarman denied defendant's motion for summary judgment. That case apparently still remains pending. In Rains v. Niaqua, Inc., 282 F. Supp. 383, Judge Henderson of the District Court for the Western District of New York after a full trial entered judgment for defendant largely relying upon the opinion of Judge Wortendyke in this case. That case is now pending on appeal in the United States Court of Appeals for the Second Circuit. A number of other actions are pending in the District Courts of New Jersey and the Southern District of New York.

3. Hook & Miller v. Hook & Ackerman, Inc., 233 F.2d 180, 181–183 (3 Cir. 1956), cert. denied, 352 U.S. 960, 77 S.Ct. 350, 1 L.Ed.2d 325 (1957); cf. Newburgh

Plaintiff's patent consists simply of various views of an on-the-ground pool. The basic design depicts a rectangular tank with vertical sides. A base extending slightly outward surrounds entirely the bottom of the tank. The top of the tank is surrounded on all four sides by a horizontal deck which is enclosed by a vertical crisscross fence. A ladder at the middle of one of the long sides of the pool provides access to the deck. Struts placed at regular intervals around the entire pool extend diagonally from the base of the tank to a point slightly short of the outer edge of the bottom of the deck. At the same intervals studs are attached to the side of the tank for support. The struts, studs and deck form an open triangle which is covered by gussets which fill the open triangle except for a small space at its top and bottom.

A variation in the patent design depicts a wider deck at one end of the pool and vertical supporting posts reaching to the ground. Another variation is a larger version of the first design, with additional struts, studs and gussets.

In moving for summary judgment the defendant relied on a number of exhibits containing prior art. It is necessary only to review that portion of the prior art which is closest to plaintiff's design. A drawing for French Patent No. 768,-506, a mechanical patent, issued in May, 1934, was submitted without verbal description of the patent itself. The drawing discloses an on-the-ground pool with what appears to be a rectangular tank, a deck extending horizontally from the long sides of the top of the tank, with struts similar to plaintiff's, but with no gussets. A vertical fence which is not, however, crisscross in type, encloses the two decks. A ladder extends from the end of the deck to the ground.[4]

A design patent issued to Donald Pruess in 1961[5] shows a square on-the-ground tank with a deck similar to plaintiff's which surrounds the pool. The fence, however, is not crisscross and is inclined outward from the deck, supported by struts extending from the top of the fence diagonally down to the base of the tank. There are no gussets. The pool has a modernistic flair and is marketed as the "Futura" by International Swimming Pool Corp.

Other previously patented on-the-ground pools have decks supported by vertical posts rather than diagonal struts. Defendant also presented a number of mechanical patents for window scaffolds and brackets, designed to provide strength and having the general triangular shape of the strut-gusset arrangement. Pictures of a crisscross fence like plaintiff's in Popular Mechanics were also presented.

■■ On the basis of the prior art the district judge granted summary judgment for the defendant. Such a judgment is appropriate, under Rule 56 of the Federal Rules of Civil Procedure,[6] in patent cases as in other civil actions where there is no genuine issue of material fact. In such cases, however, we begin with the statutory presumption of the validity of a patent and the consequent requirement that the burden of establishing its invalidity rests on the party who asserts it.[7]

---

Moire Co., Inc. v. Superior Moire Co., Inc., 218 F.2d 580 (3 Cir. 1955). See also George P. Converse & Co., Inc. v. Polaroid Corp., 242 F.2d 116, 119–120 (1 Cir. 1957); Cutting Room Appliances Corp. v. Empire Cutting Machine Co., Inc., 186 F.2d 997 (2 Cir. 1951).

4. Plaintiff filed an affidavit claiming that the verbal patent description shows that the sides of the tank are curved and its overall shape is that of a U. The diagram in the patent does not show both ends or both sides of the pool.

5. U. S. Design Patent No. Des. 189,811, issued February 28, 1961.

6. Methode Electronics, Inc. v. Elco Corp., 385 F.2d 138, 141 (3 Cir. 1967); Allen-Bradley Co. v. Air Reduction Co., Inc., 391 F.2d 282 (3 Cir. 1968).

7. Section 282 of the Patent Act of 1952 provides in part as follows:
 "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." (35 U.S.C. § 282).

■■ In seeking to sustain the summary judgment in its favor defendant argues that it was proper because each party had filed a cross-motion for summary judgment. Although plaintiff filed no such motion the opinion of the district judge assumed from remarks in plaintiff's brief that he, too, sought summary judgment. But even if these remarks could be deemed the equivalent of a cross-motion by plaintiff for summary judgment,[8] it would not serve to avoid a consideration of the correctness of the entry of summary judgment. Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment. F.A.R. Liquidating Corp. v. Brownell, 209 F.2d 375, 380 (3 Cir. 1954).

We turn then to the merits.

The district judge granted summary judgment for the defendant on two grounds: (1) Plaintiff's design was obvious in the light of the prior art because what he had done disclosed at best the talent of an adaptor, but not the art of an inventor. "The design as a whole", said the district judge, "would be obvious to a carpenter of ordinary skill familiar with the prior art." (2) The design was not ornamental and was not the product of aesthetic skill and artistic conception and had "no particularly aesthetic appeal in line, form, color or otherwise."

Section 171 of the Patent Act of 1952 provides:

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided." (35 U.S.C. § 171).

■ We have held that in order to be patentable a design must be new, original, ornamental and non-obvious to a person of ordinary skill in the art. R. M. Palmer Co. v. Ludens, Inc., 236 F.2d 496, 500 (3 Cir. 1956).[9]

■ The standard of non-obviousness under § 103, which the district judge held that plaintiff did not meet, includes the previously developed standard of invention,[10] often used synonymously with originality.[11] In Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed. 2d 545 (1966), the Supreme Court said: "[T]he § 103 condition, [non-obviousness] * * * lends itself to several

---

8. See Rules 7(b) and 56, Federal Rules of Civil Procedure.

9. Section 103 of the Patent Act of 1952 provides:
 "A patent may not be obtained though the invention is not identically disclosed or described * * * [by the prior art,] if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * * *" (35 U.S.C. § 103).

10. Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 13–16, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

11. See Smith v. Whitman Saddle Co., 148 U.S. 674, 679, 13 S.Ct. 768, 37 L.Ed. 606 (1893); Krem-Ko Co. v. R. G. Miller & Sons, Inc., 68 F.2d 872, 873 (2 Cir. 1934).
 Originality is also used to refer to the requirement of § 102(f) that no patent shall issue if the prospective patentee "did not himself invent the subject matter sought to be patented * * *." (35 U.S.C. § 102(f)). See Note, Design Protection—Time to Replace the Design Patent, 51 Minn.L.Rev. 942, 948 (1967). Defendant does not dispute the existence of originality in this sense.

246 that his pool has had a remarkable great acceptance

basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. * * * Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

The prior art shows that plaintiff's design at least differed from it in utilizing the gussets and combining them with the separate vertical fence and surrounding the entire pool with the deck and fence to create the effect of a large rectangle over a smaller rectangle. This design is not identical with the prior art and indeed defendant does not seriously contend otherwise.

On the standard of skill in the art, defendant offered no evidence, expert or otherwise. Plaintiff, however, in opposition to the motion for summary judgment offered affidavits and depositions on this subject. An affidavit of Henry S. Fischler, whose application for a patent was held by the Patent Office to constitute an interference with plaintiff's patent application, averred that at the time he made his patent application, International Swimming Pool Corp., his employer, was the dominant corporation in the on-the-ground swimming pool industry and that when International first learned of plaintiff's design it recognized that it was new, original, attractively ornamental and non-obvious not only to persons of ordinary skill in this field, but even to those possessing very considerable skill in the art. Fischler attested to his agreement with this judgment. He averred that because of its high opinion of plaintiff's design International directed him to prepare an application as close to it as possible. Fischler had had eleven years of continuous experience in the on-the-ground swimming pool industry and had worked for a number of manufacturers of such pools. The designs marketed by plaintiff and those who have substantially copied his design account, according to Fischler's affidavit, for approximately ninety per cent of the on-the-ground swimming pool sales in the United States. Plaintiff's company is now dominant in sales and popularity in the industry, which Fischler described as highly competitive. This success he said was not due to superior advertising or marketing, since plaintiff's competitors have also done this, but without the same success. Nor was it due, according to Fischler, to a generally expanding market. Plaintiff's design, Fischler averred, had been copied or imitated innumerable times by competitors, and defendant itself, a former supplier for plaintiff's pool, deliberately copied it.[12]

 While some of these allegations state ultimate conclusions of law, they are entwined with allegations of fact which show that the level of skill required to produce plaintiff's design reaches beyond the minimum necessary for a patent and that his pool has had a remarkably great acceptance by the public. Evidence of facts establishing the level of skill in an industry necessarily are often cast in language similar to the ultimate conclusion of law, but the evidence is not to be disregarded on this account,[13] and while commercial suc-

12. In addition, Donald Pruess, the holder of the Pruess patent, in an affidavit averred: "Mr. Rains' pool has a substantially different appearance from my own designs. * * * I know that customers are able to tell these pools apart by their appearance and that the appearance of Mr. Rains' pool has contributed substantially to its successful marketing.

"In my opinion Mr. Rains' design as shown in the patent was new, original, ornamental and certainly non-obvious to a person of ordinary skill in the art at the time Mr. Rains invented it."

13. See Sperti Products, Inc. v. Coca-Cola Co., 399 F.2d 607 (3 Cir. 1968).

cess alone is not enough to render an article necessarily patentable, it is relevant evidence of non-obviousness.[14]

 With these affidavits before the court we find it impossible to say that there is no factual determination to be made regarding the level of skill in the art. We cannot say that it is clear to us as laymen from a mere visual inspection and from the prior art that plaintiff's design was obvious to a person of ordinary skill in the art.[15] In determining whether summary judgment should be granted judges may not leap beyond the boundaries marked by experts and declare as laymen in the art that a new article or design is either obvious or non-obvious. As L. Hand, J., remarked: "Courts, made up of laymen as they must be, are likely either to underrate, or to overrate the difficulties in making new and profitable discoveries in fields with which they cannot be familiar * * * *.[16]

 It therefore was error to enter summary judgment for the defendant on the issue of obviousness.

 The district court also erred in holding on summary judgment that plaintiff's design was not ornamental. To be ornamental the configuration must be designed for aesthetic appeal rather than dictated primarily by functional requirements,[17] and the design as a whole must produce a pleasing impression on the aesthetic sense [18] of the ordinary observer.[19]

 The district court did not question that plaintiff designed the pool for aesthetic appeal, but it held that the design did not have aesthetic quality. Our examination of the design of plaintiff's pool leads us to the conclusion that it cannot be said as an indisputable statement of fact that the design is not pleasing to the ordinary observer, especially when this is considered together with the evidence of its wide popularity and commercial success.[20]

Defendant seeks to overcome this conclusion by the contention that the gussets were designed to provide support for the deck and walls of the tank rather than for ornamental purposes. Plaintiff disputes this contention and points to other methods of support which would have been of greater structural value as showing that their use was dictated by ornamental considerations. Moreover, in the prior art no gussets were used for support. Since neither party has offered any facts to resolve their dispute on this question it must await determination at trial.

 Finally, defendant contends that even if the district court was in error in granting summary judgment for lack of non-obviousness and lack of ornamental quality, the judgment nevertheless should be sustained because plaintiff's patent lacked novelty. The standard of novelty is whether the design appears to the ordinary observer to differ from the prior art and not to be a mere modification of it.[21] Here, too, there exists

---

14. Graham v. John Deere Co. of Kansas City, 383 U.S. at 17–18, 86 S.Ct. 684; Frank W. Egan & Co. v. Modern Plastic Machinery Corp., 387 F.2d 319, 324 (3 Cir.), cert. denied, 391 U.S. 966, 88 S. Ct. 2036, 20 L.Ed.2d 879 (1968); Jones Knitting Corp. v. Morgan, 361 F.2d 451, 458 (3 Cir. 1966).

15. Cf. Allen-Bradley Co. v. Air Reduction Co., Inc., 391 F.2d 282 (3 Cir. 1968).

16. Safety Car Heating & Lighting Co., Inc. v. General Electric Co., 155 F.2d 937, 939 (2 Cir. 1946).

17. Methode Electronics, Inc. v. Elco Corp., supra, n. 6.

18. R. M. Palmer Co. v. Luden's Inc., 236 F.2d at 500–501.

19. See J. R. Wood & Sons, Inc. v. Abelson's, Inc., 74 F.2d 895, 896 (3 Cir. 1934); Boyle v. Rousso, 16 F.2d 666, 668 (8 Cir. 1926). In re Schraubstadter, 26 App.D.C. 331 (1905); In re Rutledge, 47 F.2d 797 (C.C.P.A.1931). See also Gorham Mfg. Co. v. White, 81 U.S. 511, 527–528, 20 L.Ed. 731 (1871).

20. See Jacob Elishewitz & Sons Co., Inc. v. Bronston Brothers & Co., Inc., 40 F.2d 434 (2 Cir. 1930).

21. Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 617 (2 Cir.

a question of fact,[22] for it is not obvious from a comparison of plaintiff's design with the prior art that plaintiff's design was not novel, especially when this is considered along with the evidence of its commercial success.

We conclude that there are genuine issues of material fact which must be determined at a trial and that the entry of summary judgment therefore was error.

The judgment of the district court will be reversed and the cause remanded for further proceedings.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

In this patent case plaintiff sued defendant for infringement. Defendant moved for summary judgment on the ground that the patent is invalid and not infringed. It stated that "There is no genuine issue as to any fact material to disposition of this motion and defendant is believed entitled to judgment as a matter of law." Appellant agrees that in such situation summary judgment procedure is correct practice. See Allen-Bradley Co. v. Air Reduction Co., Inc., 391 F.2d 282 (3 Cir. 1968). Supporting its motion re validity it presented the prior art cited by the Patent Office in the matter together with prior art not cited by said Office. Plaintiff in his brief opposing a finding in favor of the defendant on said motion made the following affirmative statement concerning the use of summary judgment in this particular instance.

"While summary judgment is a difficult remedy to obtain in a patent case, we are in accord with its application here. As a result of defense counsel's diligent research the Court has before it all of the necessary prior art to determine validity." The trial judge properly construing plaintiff's view as complete acceptance of the summary judgment procedure for determination of the base question as to the validity of the suit patent, proceeded to an exhaustive examination of the evidence thereon. His fundamental test for the granting of a design patent was that it "must be based upon invention of a new, original and ornamental design non-obvious to a person of ordinary skill in the art." That is the sound teaching of Judge Kalodner's opinion in R. M. Palmer Co. v. Luden's, Inc., 236 F.2d 496 (3 Cir. 1956) which states the basic law here involved. The single claim of appellant's patent consists of reference to the drawings of same which are the only descriptive specifications of the patent. After study of all the related prior art, which is presented at length in his opinion, the district judge concluded that the plaintiff merely combined elements which were all prior art; that plaintiff was most familiar with that prior art and by an ordinary designer's regrouping of it came up with his pool design. The whole evidence plainly justifies the court's holding.

Much of plaintiff-appellant's briefs are devoted to a labored effort at denying that he had flatly conceded that "the Court has before it all of the necessary prior art to determine validity" and that therefore he was in accord with the use of the summary judgment procedure to so determine the all important question of validity of the patent. There is nothing now advanced in appellant's briefs from which can be inferred a genuine fact controversy regarding the patent's validity. The statutory presumption of validity is urged as a last resort but that falls as it should in the face of the impressive lack of the same

1962) ; Thabet Co. v. Kool Vent Metal Awning Corp. of America, 226 F.2d 207, 212 (6 Cir. 1955) ; Application of Bartlett, 300 F.2d 942, 943–944 (C.C.P.A. 1962).

22. See New York Belting & Packing Co. v. New Jersey Car Spring & Rubber Co.,

137 U.S. 445, 450, 11 S.Ct. 193, 34 L.Ed. 741 (1890) ; Jacob Elishewitz & Sons Co., Inc. v. Bronston Brothers & Co., Inc., supra, n. 20. See also Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) ; Bischoff v. Wethered, 76 U.S. 812, 19 L.Ed. 829 (1869).

statute's essentials for patentability. Clearly the appellant's pool design is not new; it shows no skill that rises to invention; compared to the prior art it fails in any original inventive ornamentation.

Appellant, in asserting his afterthought contentions, would now have it that the holding below is contrary to Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Actually, the district judge primarily relied upon that landmark decision for his findings in this appeal. In Graham, Mr. Justice Clark for the Court laid down the fundamental principle that:

> "While the ultimate question of patent validity is one of law, A. & P. Co. v. Supermarket Equipment Corp., supra, [340 U.S. 147] at 155 [71 S.Ct. 127, 131, 95 L.Ed. 162], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

The trial judge meticulously followed the above guidelines. He passed upon all of the prior art and ascertained the differences between the latter and the Rains patent. He resolved the level of ordinary skill in the pertinent art. Strictly observing the Graham requirements, he determined from all of the above that there were no non-obvious arrangements in the Rains pool, that there were no genuine facts at issue regarding the validity of the said patent. Appellant's deliberate attempted repudiation of his carefully considered conclusion in his brief to the district judge that there were no true questions of fact on the validity issue, glaringly reveals how right he was the first time when he admitted that there were no genuine questions of fact in the validity

issue and that the latter was properly before the court on motion for summary judgment.

I would affirm the judgment of the District Court.