**J. G. FURNITURE COMPANY, INC., Plaintiff,**

v.

**LITTON BUSINESS SYSTEMS, INC., Defendant.**

Nos. 73 Civ. 1259, 73 Civ. 1768.

United States District Court, S. D. New York.

May 31, 1977.

Inc. ("Litton") has moved for summary judgment, pursuant to Rule 56, Fed.R. Civ.P., on the ground that the subject matter of plaintiff J. G. Furniture's allegedly infringed design patents would have been obvious to a person of ordinary skill in the art at the time the alleged invention was made (35 U.S.C. § 103). In 73 Civ. 1259, plaintiff has cross-moved for partial summary judgment holding its patent unobvious and valid in view of the prior art cited by defendant. In 73 Civ. 1768, defendant seeks summary judgment on the additional ground that the patent is invalid as being primarily the result of functional or utilitarian requirements (35 U.S.C. § 171). All three motions are denied.

Plaintiff is the assignee of two design patents which were issued to its assignor, Mr. John Nance, an employee of plaintiff. The patent in suit in 73 Civ. 1259 is United States Design Patent No. D.223,046, which was issued on February 29, 1972 in response to an application filed on June 17, 1970. The subject matter of the patent is an L-shaped wooden desk and return unit which plaintiff refers to and markets as its "Reveal" desk system. The desk, which will be described in greater detail *infra,* is pictured in Exhibit A through the line drawings submitted to the Patent Office, and in Exhibits B and C through reproductions of photographs taken from different perspectives.

The patent in suit in 73 Civ. 1768 is United States Design Patent No. D.225,046, which was issued on November 7, 1972 in response to an application filed on December 29, 1970. The subject matter of this patent is a "desk array", referred to and marketed as plaintiff's "Reveal Raceway" desk system. This design consists of the parallel placement of two of plaintiff's Reveal desks and returns, separated by a raceway[1] approximately six inches wide. The raceway is movable and designed for easy installation on the Reveal desks. In the panel forming the cover of the raceway are grommet holes which function as passageways for electrical and/or telephonic wires or cables, and electrical outlet receptacles.

Hubbell, Cohen, Stiefel & Gross by Maurice B. Stiefel, Lawrence G. Kurland, New York City, for plaintiff.

Morgan, Finnegan, Pine, Foley & Lee by John A. Diaz, Robert E. Paulson, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

In these two related patent infringement actions, defendant Litton Business Systems,

---

1. A raceway is a channel designed for loosely holding electrical wires or cables.

■ To be patentable, a product, including a design,[2] must not be "obvious":

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made. 35 U.S.C. § 103.

Before examining in detail the particular facts of this case, it is useful to review the governing criteria which have been developed by the courts in applying section 103.

■ Although the grant of a patent by the Patent Office is attended by a statutory presumption of validity,[3] the Court of Appeals in this Circuit has recently reaffirmed that "[section 103] mandates a 'rather rigorous standard' in judging whether [a] claimed new invention [is] non-obvious [citation omitted]." *Maclaren v. B–I–W Group Inc.*, 535 F.2d 1367, 1376 (2d Cir. 1976), *petition for cert. filed*, 45 U.S.L.W. 3371 (Nov. 16, 1976). Although " 'the corrosive effect' of time can easily lead a court to succumb to the tendency of regarding virtually any improvement as 'obvious' in light of the modern, updated art . . . courts have not been lax in closely scrutinizing the 'non-obviousness' of a claimed invention and disregarding patents that follow too closely in the wake of their predecessors [citations omitted]." *Id.* at 1375–6.

In the case of design patents, the courts of this Circuit have been particularly demanding. In discussing the requirement of section 103, Judge Friendly has noted that

[w]e have frequently indicated that the requirement of invention is not met by a

design which is merely "new and pleasing enough to catch the trade"; rather we have insisted that the design reflect "some exceptional talent beyond the skill of the ordinary designer" . . . or "inventive genius" . . . . We have noted that in view of this "[t]o obtain a valid design patent is exceedingly difficult [citations omitted.]" *G. B. Lewis Company v. Gould Products, Inc.*, 436 F.2d 1176, 1178 (2d Cir. 1971).

Moreover, if a patent claim is based upon a combination of elements in the prior art, it must be scrutinized "with special care," *Julie Research Laboratories, Inc. v. Guildline Instruments, Inc.*, 501 F.2d 1131, 1136 (2d Cir. 1974), although "[t]he mere fact that a person has utilized in combination a number of elements which severally were well known will not defeat the patentability of the combination." *Blisscraft of Hollywood v. United Plastics Company*, 294 F.2d 694, 696 (2d Cir. 1961).

■ While the ultimate question of patent validity and the subsidiary determination of obviousness are both questions of law, *Julie Research, supra*, at 1136, the Supreme Court has indicated that the question of obviousness is to be determined against the background of three factual inquiries: "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966); *Sakraida v. Ag. Pro, Inc.*, 425 U.S. 273, 280–281, 96 S.Ct. 1532, 1536–1537, 47 L.Ed.2d 784, 790 (1976). Accordingly, the court must examine each of these areas in light of the facts upon which the parties rely in support of their respective motions for summary judgment. Neither of the parties question that the summary judgment mechanism may be em-

---

2. 35 U.S.C. § 171: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

3. 35 U.S.C. § 282: "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

ployed in some cases to determine the validity of a patent challenged on the ground of obviousness. *See G. B. Lewis, supra; Lancaster Colony Corp. v. Aldon Accessories, Ltd.*, 506 F.2d 1197 (2d Cir. 1974) (cross-motions); *Monaplastics, Inc. v. Caldor, Inc.*, 378 F.2d 20 (2d Cir. 1967); *Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.*, 444 F.2d 295 (9th Cir. 1970). Not surprisingly, however, they do differ as to its appropriateness in this case.

### The Reveal Desk and Return (73 Civ. 1259)

In its General Rule 9(g) statement of those material facts as to which it contends there is no genuine issue to be tried, defendant contends that plaintiff's patented design for the Reveal desk and return was anticipated in all significant respects by two articles of prior art: (1) the "Group 45" desk series of defendant's predecessor, The Lehigh Furniture Company, which is depicted by reproductions of photographs in Exhibits D and E, and (2) United States Letters Patent No. 3,418,030, issued to one S. W. Golden on December 24, 1968, and reproduced as Exhibit F. Plaintiff acknowledges that both these articles constitute part of the prior art, and only disagrees with defendant in its description of the differences between those designs and the patent in suit. The differences in the articulation of the distinctions between the designs are minor, however, and the actual differences may be discerned from an inspection of the photographs and line drawings.

As is apparent from a comparison of the Reveal desk and return and defendant's Group 45 desk and return, the overall configuration of both designs is virtually identical. The differences between the two are to be found in the "look" or visual impression created by the details of construction.

The Group 45 desk,[4] which has been sold continuously by defendant[5] since 1962, is characterized by a continuity of wood grain throughout, from the desk top and down the desk sides, as well as from the desk side to the return side and around the corner to the return end panel. This effect, which defendant referred to in its advertisements as "bending the tree", was achieved by miter-joint construction, rather than by butt-joint construction, and gives the impression that the desk was prepared from a single piece of wood.

The Reveal desk, on the other hand, creates no such impact of visual continuity. Instead of using miter-joint construction, the top and side slabs are butted together, with a resulting discontinuity of grain. Moreover, various planes of the desk are delineated and stressed by the use of dark spacer strips (or "reveals") between each panel. Specifically, spacer strips are found between the top and side panels, the desk side and the return side, the return side and the return end panel. It is precisely the use of these spacer strips which is claimed to create the distinctive feature of plaintiff's patented design[6] (although plaintiff does not assert that it was the first to ever use spacer strips as a design element).

The Golden patent is obviously very different in general configuration. However, that design does employ decorative strips running across the top of the desk parallel to the sides. As stated by the inventor, "[t]he resulting appearance of the finished desk is one where almost the entire exposed surface consists of the wood, plastic or other desirable material, with only thin corner strips of reinforcing metal exposed. . . These exposed metal strips actually act as decorative additions to the desk without any indication of their primary purpose as reinforcement means."[7]

---

4. In the remaining portion of this opinion, the term "desk" will encompass both the desk and return unit.

5. Use of the term "defendant" will encompass Litton's predecessors, The Lehigh Furniture Company and Lehigh-Leopold Manufacturing Co., Inc., as well as Litton itself.

6. As claimed by the inventor, Mr. Nance, on the patent application, "[t]he design is characterized by the use of horizontal spacer strips positioned between the uppermost substantially co-planar horizontal surfaces of the desk top and each of the desk side supports, all as shown."

7. Quoted from the Abstract of the Disclosure for patent No. 3,418,030.

In essence, therefore, there is no dispute between the parties as to the scope of the prior art. Nor is there any serious dispute as to the differences between the patented Reveal desk and the prior art, which are apparent from a simple visual inspection of the photographs and drawings.

The remaining factual inquiry concerns "the level of ordinary skill in the pertinent art". *Graham, supra,* 383 U.S. at 17, 86 S.Ct. at 694. In the case of design patents, the law in this Circuit is clear that the requisite level of skill against which comparisons are to be made is that of the ordinary designer who is chargeable with knowledge of the prior art. *Hygienic Specialities Co. v. H. G. Salzman, Inc.,* 302 F.2d 614, 617 (2d Cir. 1962); *Horwitt v. Longines Wittnauer Watch Co., Inc.,* 388 F.Supp. 1257, 1261 (S.D.N.Y.1975).

In support of its assertion that the Reveal design would not have been "obvious" to such a craftsman, plaintiff has submitted the affidavits of an architect and three interior designers whose credentials, in the court's view, clearly establish that they are at least as skilled as the "ordinary designer". All four of these individuals aver that they have examined plaintiff's Reveal desk, defendant's Group 45 desk, and also the Golden patented design (which was never commercially produced). In their view, the Reveal desk design would not have been at all "obvious", even after consideration of the Group 45 desk and the Golden design, singly or in combination.

In response to these submissions, defendant has not attempted to submit any rebuttal affidavits by its own experts. Rather, it urges that the court should disregard plaintiff's affidavits as irrelevant. Defendant urges that, since the patent in suit is a design patent "whose essential claim lies in the originality of the visual impression it creates", *G. B. Lewis, supra,* at 1179, this court should merely compare the Reveal desk with the prior art and make its own determination as to whether the likeness is so "strikingly similar", *Trimble Products,*

*Inc. v. W. T. Grant Co.,* 283 F.Supp. 707, 714 (S.D.N.Y.), *aff'd* 404 F.2d 344 (2d Cir. 1968), as to render the Reveal patent "obvious" and invalid.

It is certainly true that the Second Circuit has sanctioned the grant of summary judgment of invalidity, even in the face of claims that the trial court should have taken expert testimony to ascertain the level of ordinary skill in the pertinent art. *See G. B. Lewis, supra; Monaplastics, supra.* The rationale of these cases has been that such testimony is less necessary in design patent cases than in invention patent cases which may involve complex technological developments. As pointed out by Judge Friendly, "[i]n [design patent cases], while expert testimony may well aid a judge in refining his sense impressions, the function filled by such testimony in more technical matters can generally be satisfactorily discharged by the arguments of [able counsel]." *G. B. Lewis, supra,* at 1179. In some such cases, in which "the prior art and the patent claims [were] not complex and [were] easily understandable without expert aid," the court ruled that "it truly would be 'an absurd waste of time and effort' to deny summary judgment." *C-Thru Products, Inc. v. Uniflex, Inc.,* 397 F.2d 952, 955 (2d Cir. 1968). So far as can be determined from an examination of the opinions in those cases, however, the trial judge was not presented, in opposition to the motion for summary judgment, with any such expert affidavits as plaintiff has produced in this case. To hold, under the circumstances of this case, that the patented design would have been "obvious" to an ordinary designer, despite the unrebutted allegations of plaintiff's experts' affidavits, would be to rule that these affidavits are insufficient to raise an issue of fact on this question. Such a ruling appears inappropriate.

It is certainly true that the affidavits are couched in language which, to some degree, embodies ultimate conclusions of law which are at issue.[8] However, the court clearly

---

8. For instance, the affidavit of Massimo Vignelli concludes (at p. 5) by saying that "I believe that the unique and distinctive design [of the Reveal desk] is quite unobvious from either the [Group 45 desk], [the Golden desk], or any combination of these two desks."

would not consider those averments as to the unobviousness of the patent in suit conclusive on the legal issue.

■■■ The court's determination concerning the "obviousness" of the patent in suit is one guided by several criteria. On the one hand, the requirement that a patented article embody some innovation or advancement is, at base, one dictated by the Constitution itself, *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc.*, 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), and thus one which the courts must carefully enforce. Moreover, the courts must bear in mind that the grant of a patent is the grant of an economic monopoly which the Congress has seen fit to bestow only on designs and inventions meeting certain limited criteria. *See Maclaren, supra,* at 1375. Thus, the courts clearly have a policing function to ensure that the application of standards by the Patent Office does not become too lax.

■■■ However, Congress has chosen to define obviousness in terms of what would be apparent "at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Congress clearly did not intend that such a determination should rest solely upon the subjective impressions of federal judges, guided solely by hindsight, irrespective of any and all factual showings to the contrary. *See Graham, supra,* 383 U.S. at 17, 86 S.Ct. 684. As Judge Learned Hand

noted in a decision which preceded *Graham* but in language which appears entirely consistent with that case and its progeny, "[t]o judge on our own that this or that new assemblage of old factors was, or was not, 'obvious' is to substitute our ignorance for the acquaintance with the subject of those who were familiar with it." *Reiner v. I. Leon Co., Inc.*, 285 F.2d 501, 504 (2d Cir. 1960), *cert. denied*, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961).[9] *But see Schwinn, supra,* at 299, 300.

Faced then with the affidavits submitted by plaintiff's experts, the court is inclined to agree with the approach of Judge Knapp in *Horwitt, supra,* who, when faced with the unrebutted testimony of plaintiff's experts, declined to substitute his judgment for theirs concerning the obviousness of the disputed patent. 388 F.Supp. at 1261. While this court does not imply that such affidavits or testimony would be *conclusive* on the issue of the patent's validity, an issue of law, they seem certainly sufficient to raise a genuine issue of material fact—as to the level of skill in the art—such as to make a summary judgment of invalidity inappropriate.[10]

Such a result also seems appropriate in view of the history of *Rains v. Cascade Industries, Inc.*, 269 F.Supp. 688 (D.N.J. 1967), in which a District Judge invalidated a patent for obviousness, indicating that the design as a whole would be obvious to a carpenter of ordinary skill familiar with the

---

**9.** The Second Circuit's recent deprecation of Judge Hand's opinion in that case, *Digitronics Corp. v. The New York Racing Association, Inc.*, Docket Nos. 76–7063, 76–7085 (decided April 4, 1977), at pp. 2686–7, does not undermine the validity of the cited observation. *Digitronics* merely reaffirmed the holdings of several earlier cases that "secondary considerations", discussed briefly *infra*, cannot validate a patent which is otherwise found invalid for lack of invention. It did not suggest, as it could not, that a trial court should dispense with the factual inquiries mandated by the *Graham* case and determine that a patent would be obvious to an ordinary craftsman, irrespective of factual showings to the contrary.

**10.** This result appears not inconsistent with Judge Connor's remark in *Splendid Form*

*Brassiere, Inc. v. Rapid-American Corp.*, 187 U.S.P.Q. 151, 157 (S.D.N.Y.1975) that "[t]he fact that [defendant's expert] testified in the role of an expert in the field entitles her opinion to no added weight. Patented designs must be evaluated in terms of their impression on an 'ordinary observer.' [citations omitted]". It is not clear from the opinion that the expert testified as to anything more than the physical differences between the designs at issue, rather than the separate question as to whether the claimed advance embodied in the patented design would have been "obvious" to her, as an expert, or to one of average skill in the field. Moreover, her opinion would clearly not be dispositive of the ultimate legal issue of the obviousness of the patent at issue.

prior art. 269 F.Supp. at 696. This result, reached in the face at least two affidavits from skilled craftsmen indicating their belief that the patent in question was not obvious, was subsequently criticized,[11] and ultimately reversed by the Third Circuit, which indicated that "[w]ith these affidavits before the court we find it impossible to say that there is no factual determination to be made regarding the level of skill in the art. We cannot say that it is clear to us as laymen from a mere visual inspection and from the prior art that plaintiff's design was obvious to a person of ordinary skill in the art." *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 247 (1968).[12]

 Accordingly, since plaintiff has made a sufficient showing to raise a genuine factual issue concerning the level of skill of an ordinary designer, the court denies defendant's motion for a summary judgment that the Reveal desk design is invalid. However, as noted *supra,* the opinions expressed in these affidavits are insufficient, by themselves, to support a grant of summary judgment *for* plaintiff declaring the patent valid and non-obvious. The level of skill in the art must be ascertained at trial as a matter of fact, and the inconclusive circumstantial evidence, discussed *infra,* is insufficient to support a grant of summary judgment.

In support of its own motion for partial summary judgment, plaintiff does not rely solely upon the readily apparent differences in design between the Reveal desk and the prior art, nor upon the opinions of its expert designers. It notes, first, that the Group 45 desk, concededly part of the prior art, was considered by the Patent Examiner who granted the patent in suit, and that, therefore, the statutory presumption of patent validity is strengthened. *Georgia-Pa-*

*cific Corp. v. United States Plywood Corp.,* 258 F.2d 124, 132–3 (2d Cir.), *cert. denied,* 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958).

More cogently, however, it has advanced the results of apparently copious pre-trial discovery into the "secondary considerations" such as commercial success, satisfaction of long-felt needs in the trade, and actual copying which have been recognized by the federal courts as being relevant circumstantial evidence of the obviousness or non-obviousness of challenged patents. *See Graham, supra,* 383 U.S. at 17–18, 86 S.Ct. 684; *Lancaster, supra,* at 1199–1200. Although the Court of Appeals for this Circuit has emphasized in a number of cases that such evidence is of "distinctly secondary importance" in instances where the differences between the prior art and the questioned patent are insubstantial, *Maclaren, supra,* at 1376, and that such evidence cannot, of itself, establish lack of obviousness, *Julie Research, supra,* at 1135, it remains relevant in a "close case". *Vanity Fair Mills, Inc. v. Olga Company (Inc.),* 510 F.2d 336, 340 (2d Cir. 1975).

Plaintiff has submitted a rather extensive statement of those material facts as to which, it alleges, there is no genuine dispute to be tried. In the main, these facts, a substantial portion of which are not disputed, constitute circumstantial evidence of defendant's access to plaintiff's Reveal design (and, inferentially, copying by defendant), and the commercial success of defendant's Group 46 desk, which is the product accused of infringing plaintiff's patented Reveal design. In its statement plaintiff does not assert the "ultimate" facts it clearly seeks to establish, i. e., (1) that the success of the Group 46 design was due to features allegedly copied from its own patented de-

---

**11.** Michaelsen, *Design Patents and Obviousness—Obvious to Whom?,* 52 Journal of the Patent Office Society 620, 634 (1970).

**12.** Although the Court of Appeals for this Circuit later indicated its agreement with the opinion of the New Jersey federal trial judge in the *Rains* case, it is clear from the context in which the remark was made that their agreement was

based upon their concurrence with the ultimate judgment that the patent at issue in that case was invalid, rather than upon any determination as to whether or not summary judgment was appropriate in the circumstances of that case. *Rains v. Niaqua, Inc.,* 406 F.2d 275, 280 (2d Cir.), cert. denied, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969).

sign, and (2) that defendant did, in fact, copy its Reveal design. However, defendant, in its counter statement, flatly denied both such ultimate inferential assertions. While it is certainly true that a mere general denial is insufficient to raise a genuine issue of fact for trial, *United States v. Prince,* 348 F.2d 746, 748 (2d Cir. 1965), defendant has submitted some evidence to buttress its assertions. Specifically, it submitted the affidavit of Bertram S. Silver, the former president of the Lehigh-Leopold Furniture Division of Litton, who categorically denied plaintiff's assertion that defendant copied the Reveal desk. Furthermore, defendant relied on deposition testimony which would tend to indicate that the reason for the success of the Group 46 desk line was not its similarity in distinctive respects to plaintiff's Reveal desk line, but rather the fact that it was a lower priced version of defendant's own Group 45 line, which had been produced as early as 1962.

Whatever the merits of these varying factual positions, it is clear that the conflicting viewpoints regarding the ultimate facts plaintiff seeks to prove preclude summary judgment of validity for plaintiff in this case. Without in any way indicating what weight would be attached to a finding of either deliberate imitation by defendant or commercial success due to attributes similar to those of the Reveal desk, the court merely makes clear that these "facts" are disputed, and therefore cannot form part of the basis for a grant of summary judgment. Accordingly, plaintiff's motion for partial summary judgment declaring that the Reveal desk patent is valid and not obvious is denied.

### The Reveal Raceway Desk System
### (73 Civ. 1768)

As in the prior case, the court denies defendant's motion for a summary judgment of obviousness in this case, since plaintiff has adequately raised a factual issue concerning the level of skill in the art.

In its statement of those facts on which it relies in support of its motion for summary judgment of invalidity in this case, defendant sets forth three different sources of prior art which, it contends, anticipate the patented design for the Reveal Raceway Desk System (depicted as Exhibit G to this opinion): (1) plaintiff's own Reveal desks and returns, especially as they had allegedly already been arranged in a double line array similar to that of Exhibit G; (2) an office desk arrangement custom designed for and installed in the Forest Hills, New York office of Walston & Co., Inc. by the New York industrial design and office planning firm of Sherburne Associates, Inc., in which apparently similar desk and return units are abutted together (Exhibit H); and (3) certain knowledge imparted to plaintiff by Sherburne prior to the creation of the design at issue—specifically, a conversation between plaintiff's president and one of Sherburne's designers in which the latter advised plaintiff that Sherburne wanted to utilize the Reveal desk and return units for stock brokerage offices (which had previously required custom built desks and raceways) and that provision would have to be made for access to wiring required by stock quotation machines.

The court does not find it necessary to discuss this alleged prior art in detail, nor to point out the carefully crafted factual distinctions which plaintiff seeks to draw in controverting the existence and extent of this prior art. As in the suit involving the Reveal desk design patent, plaintiff has submitted the affidavits of four apparently skilled interior designers who discuss the alleged prior art and aver that plaintiff's patented Reveal Raceway design would not have been an "obvious" design solution even in view of the cited prior art and the practical problems to be solved. Accordingly, the court finds that these affidavits raise a sufficient factual question concerning the level of skill in the art as to make a grant of summary judgment on the ground of obviousness inappropriate in this case.

As noted previously, however, defendant seeks a summary declaration that plaintiff's patent is invalid on the additional ground that it is "primarily the result of functional or utilitarian requirements", rather than

the ornamentality required by 35 U.S.C. § 171. This motion is denied.

Defendant's basic contention is that the decision to utilize a raceway between two Reveal desk and return units was dictated by the functional necessity of providing a passageway for electrical and telephonic cables, junction boxes, and associated equipment used particularly by brokerage offices. It points to certain deposition testimony from plaintiff's personnel which indicates that, at least in part, the width of the raceway cover is a function of the thickness of the cables and junction boxes housed within the raceway; that the raceway cover is removable in order to facilitate access to the wires enclosed in the raceway; and that the grommet holes and outlet receptacles contained in the cover perform the obvious functions of allowing the passage of the cables and providing access to sources of electricity.

Plaintiff does not dispute that these elements of the raceway design perform the obvious functions which defendant has pointed out. Rather, it contends that this particular solution to the problem of allowing access to bulky electrical cables and associated equipment was dictated by esthetic considerations as much as utilitarian requirements. In that connection, the affidavits of plaintiff's experts note (and the court can itself observe in the illustrations) that the "look" achieved by the Reveal Raceway design, emphasizing the central raceway (in some versions of the design by contrasting color), is esthetically pleasing and quite different from the other cited solutions in the prior art which have apparently addressed the same design problem.

The law regarding functionality is well settled in this Circuit:

> While design patents are not intended to protect a mechanical function, or to secure to the patentee monopoly in any given mechanism or manufacture as such, it is immaterial that the subject of the design may embody a mechanical func-

tion, provided that the design per se is pleasing, attractive, novel, useful and the result of invention. [citation omitted]. But it is the design that is patented, not the mechanism dressed in the design. *R. E. Dietz Co. v. Burr & Starkweather Co.,* 243 F. 592, 594 (2d Cir. 1917).

As the District Court noted in *Falcon Industries, Inc. v. R. S. Herbert Co., Inc.,* 128 F.Supp. 204, 212 (E.D.N.Y.1955), in holding valid a design patent for a tobacco pipe over the objection that the patent was invalid for functionality, "if this means that only a design which comprehends no useful elements can be the subject of a valid design patent, it does not correctly state the law. The statute is not restricted to solely aesthetic concepts." A number of cases have upheld design patents directed to objects embodying some eminently utilitarian function. *See, e. g., Lancaster, supra* (cigar ashtray); *Horwitt, supra* (watch face). Indeed, this result seems virtually inescapable from the language of the statute itself (35 U.S.C. § 171) which provides patent protection for "any new, original and ornamental design *for an article of manufacture . . .* " (emphasis added).

However, "[a] design dictated *solely* by mechanical or functional requirements is not patentable". *Hygienic, supra,* at 618 (emphasis supplied). Expressed in another way, a design which is "*purely* functional in character", *G. B. Lewis, supra,* at 1178, n. 4, (emphasis supplied) is not patentable. Even if the test were phrased somewhat differently, e. g., whether the design was dictated *primarily* by functional considerations, *Barofsky v. General Electric Corporation,* 396 F.2d 340 (9th Cir. 1968), *cert. denied,* 393 U.S. 1031, 89 S.Ct. 644, 21 L.Ed.2d 575 (1969), it appears clear to this court that the patent in question is not invalid on the ground of functionality. Given the standard in this Circuit, it is certainly not possible to say, as a matter of law, that the design here at issue was the product of solely functional considerations. In view of the numerous other possible solutions[13] to the design problem faced by the plaintiff, it

13. See, for instance, the other designs annexed to plaintiff's opposition papers as Exhibit 3.

is by no means clear that the design ultimately patented was dictated merely by functional constraints, irrespective of esthetic considerations. Accordingly, the motion for summary judgment on the ground of functionality is denied.

# United States Patent Office

Des. 223,046
Patented Feb. 29, 1972

223,046

**DESK**

John Nance, Quakertown, Pa., assignor to JG Furniture Company, Inc., New York, N.Y.

Filed June 17, 1970, Ser. No. 23,527

Term of patent 14 years

Int. Cl. D6—04

U.S. Cl. D33—7

FIG. I.

Exhibit A(1)

390

Des. 223,046
PAGE 2

FIG. 2.

FIG. 3.

Exhibit A(2)

Exhibit B

Exhibit C

## Desk with Secretarial Return. Group "45"

Dimensions: Desk. From 68" to 74" long x 30" deep. From 72" to 84" long x 36" deep. Height 29". Back recessed 8".
Model shown 4531. Desk 66" x 30". Return 44" x 18½".
Dimensions: Return. 44" x 18½" x 26".
Top, Sides and Back: Oiled walnut, oiled oak, oiled teak, oiled rosewood. Top and Sides: Continuous matched grain.
Note: For additional information refer to Specifications and Prices.

Exhibit D

394

**Desk with Secretarial Return. Group "45"**

Dimensions: Desk: From 68" to 74" long x 30" deep. From 72" to 84" long x 36" deep. Height, 29". Back recessed 6".
Model shown 4531. Desk 68" x 30". Return 44" x 18".
Dimensions: Return: 44" x 18½" x 26".
Top, Sides and Back: Oiled walnut, oiled oak, oiled teak, oiled rosewood. Top and Sides: Continuous matched grain.
Note: For additional information refer to Specifications and Prices.

Exhibit E

Dec. 24, 1968 S. W. GOLDEN 3,418,030

REINFORCED CONSTRUCTION UNIT

Filed April 11, 1967 2 Sheets—Sheet 1

Fig. 1

Fig. 3

Fig. 2

INVENTOR.
SEYMOUR W. GOLDEN
BY

ATTORNEY.

Exhibit F

# United States Patent Office

Des. 225,046
Patented Nov. 7, 1972

225,046

**DESK**

John Nance, Quakertown, Pa., assignor to JG Furniture
Company, Inc., New York, N.Y.

Filed Dec. 29, 1970, Ser. No. 26,689

Term of patent 14 years

Int. Cl. D6—*04*

U.S. Cl. D6—157

In the drawings:

FIG. 1 is a perspective view of a desk embodying my new design;

FIG. 2 is a top plan view of the desk of FIG. 1;

FIG. 3 is a side view of the desk of FIG. 1;

FIG. 4 is an end view of the desk of FIG. 1; and

FIG. 5 is a perspective view of an alternative embodiment of the desk.

I claim:

The ornamental design for a desk, as shown.

**References Cited**

UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| D. 183,361 | 8/1958 | McCarthy et al. | D33—7 |
| D. 203,195 | 12/1965 | Hughes, Jr. | D33—7 |
| D. 215,010 | 8/1969 | Barnes | D33—7 |
| D. 219,279 | 11/1970 | Beavers | D33—7 |

OTHER REFERENCES

Industrial Design, December 1963, p. 51, desk units in panels 9 and 11.

Exhibit G

Exhibit H